**UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK**

MISTY FREEMAN,

      Plaintiff,

      v.

CITY OF JAMESTOWN POLICE OFFICER
ELLIS, et al.,

      Defendants.

Case No. 1:17-CV-683

## OPINION AND ORDER

(ECF 26)

Plaintiff Misty Freeman ("Freeman") brings this action against several City of Jamestown police officers for allegedly violating her constitutional rights. Now before the Court is Defendants' Motion for Summary Judgment on Count II, a claim of false arrest against Defendants Ellis, Bender, and Jackson for Freeman's confinement and arrest on a charge of violating N.Y. Penal Law § 210.45, and Count III, which makes a claim of malicious prosecution against those same three defendants.[1] For the reasons set forth below, Defendants' Motion for Summary Judgment is **granted in part and denied in part.** Summary judgment is granted on Count III, as it relates to the malicious

---

[1] The Court finds that Defendants inadequately addressed Counts I and IV in their Motion for Summary Judgment.

1

prosecution claim against Defendant Ellis. Summary judgment is otherwise denied on Counts II and III.

## Background

In August of 2015, Freeman opened her home to Nicholas Desnerck ("Desnerck") and his girlfriend.  As Freeman explained in her deposition, "they were around twenty years old, and I felt bad for them" because they were homeless. Freeman Dep. 11:17-13:10, ECF No. 26-5. They stayed for less than a month. *Id.* When the couple moved out they left a dog, and Freeman rehomed it after receiving no communication from them and calling the city dog control officer. *Id.* at 26:9-27:1.

Desnerck also left belongings at Freeman's house, and returned to look through them on the morning of September 24, 2015. *Id.* at 12:6-12:7, 18:21-19:2. At that time, Freeman told him she did not want his things and asked him to bring anything he did not want to the curb. *Id.* at 19:3-19:12. Freeman later put his belongings on her front lawn, and that evening she saw him go through them with his girlfriend. *Id.* at 23:2-23:10.

Aaron Ellis ("Ellis") is employed as a police officer with the Jamestown Police Department. ECF No. 26-2 ¶ 1. On or about September 27, 2015, Desnerck and Ellis arrived at Plaintiff's home. Freeman Dep. 31:1-31:4. According to Defendants, Ellis was called to the house to act as a peace officer while Desnerck gathered belongings from the residence.  Ellis remained on the

2

sidewalk behind Desnerck and did not enter the residence. ECF
26-7; Ellis Dep. 9:9-11:4, 13:10-13:22, ECF No. 26-6.
According to Freeman, Ellis and Desnerck forced her door open
"causing damage to the door," entered her residence and did not
leave despite her repeated requests that they do so. Freeman
Dep. 32:13-38:1; 45:15-50:20. Freeman reported that she tried to
answer the officer's questions but Desnerck was a few inches
away from her face, yelling at her. *Id.* at 53:3-53:7.
Eventually, Ellis told Freeman that he was going to make sure
that she was the one arrested, and he and Desnerck left her
property. *Id.* at 54:19-54:22.

Freeman made a call to the police station because she felt
the situation should not have occurred the way it did, and she
was told that she had to come down to the Jamestown Police
Department to file a statement. Freeman Dep. 58:5-58:7, ECF No.
26-5. According to Freeman, the officer she spoke with at the
police station "called me a liar in saying that no one will
believe me because no one is going to believe against a fellow
officer, a fellow man in blue." *Id.* at 60:11-60:19. According to
Defendants, Sergeant Robert Bender ("Bender") spoke with Freeman
at the station and advised her that he "didn't think that she
was being completely truthful" with him. Bender Dep. 13:20-
13:23; 21:7-21:8, ECF No. 26-9. Plaintiff then signed a written

statement describing the incident. ECF No. 26-8. In part, she

wrote the following:

> On September 27, 2015 at around 7:30 pm I was in my home at
> 108 Pearl Avenue in Jamestown, NY. When a police officer
> accompanied by Nicholas Desnerck entered into my home
> without a warrant. I asked that unless they have a warrant
> they need to leave my home. The officer stated he had every
> right to be there as it is a part of an investigation. I
> told the officer that unless he has a warrant they need to
> leave my property, but that I was willing to speak with him
> off of my property. The officer backed away from my door
> onto the front lawn but allowed Nicholas Desnerck to remain
> near my door. I repeated asked both the officer and
> Nicholas to please step off of my property unless they have
> a warrant. The officer said "no he doesn't have to and
> since Nicholas is with him that he doesn't have to leave
> either." I felt very threatened by Nicholas Desnerck
> standing a few inches from my face yelling in my face. I
> asked Nicholas to please stop talking and to let me speak.
> Nicholas would interrupt me every time the officer would
> ask me a quest[ion] and I would try to answer the officer.
> Both the officer and Nicholas would call me a liar and say
> that's not true every time I would try to answer the
> officer's question.
>
> I would repeatedly ask Nicholas to please stop and I asked
> the officer to please remove him from the area so that I
> may answer the questions. The officer said no he doesn't
> have to remove Nicholas from the premises. The officer upon
> leaving stated "that he's going to do everything he can to
> make sure I'm the one arrested and that he's doing the
> paperwork right now." Once the officer entered in his car
> is when I immediately called the Jamestown Police
> Department non-emergency phone number to give an overview
> of what just happened. I felt extremely scared and
> terrified that they entered my home and stepped foot on my
> property without a warrant.

Freeman wrote that she felt harassed by Desnerck and Ellis, and

that "[w]hen the officer and Nicholas Desnerck entered into my

home they entered into my front door: breaking the lock in the process." *Id.*

Bender asked Defendant Lieutenant Timothy Jackson ("Jackson") to investigate Freeman's allegations. Bender Dep. 23:5-23:13, ECF No. 26-9. That same night, Jackson went to Freeman's residence and took photographs. Jackson Dep. 15:4-5, ECF No. 26-10.  Jackson also spoke with a teenage male at the residence, though the content of that conversation is disputed. According to Jackson, the young man told him that the door had been broken a couple of months ago and that no damage had occurred during the incident. *Id.* at 15:9-15:10; 19:3-19:6. Jackson said that he was told previously that the door had been broken down, and that when he found that it was not he came to the conclusion that Freeman was not telling the truth. *Id.* at 25:15-25:19. Jackson did not test the lock on the door. *Id.* at 44:15-44:21. Matthew Freeman ("Matthew"), the young man with whom Jackson spoke, testified that Jackson did not ask about the broken lock. Matthew Freeman Dep. 25:4-25:6, ECF 28-3. Matthew further testified that the door was damaged that night, and that he did not tell Jackson that the lock had been broken a couple of months before. *Id.* at 25:7-25:18, ECF 28-3.

On that same night, September 27, 2015, Matthew went to the Jamestown Police Department and filed his own statement with the police. ECF No. 26-11. He wrote in part:

> I was in the living room when there was a knock at the
> door, my mother went to investigate. At the door there was
> a lot of arguing and most of what was said was "get out.
> Need a warrant." From my mother. A bit of shuffling from
> the front doorway, they were yelling in the yard and going
> back and forth. After about 5 minutes the car and the
> police vehicle left. My mother and the man were the ones
> yelling. The man and the officer started at the doorway to
> the house and they left to the yard whilst my mother and
> the man continued the spat. My mother sent me down because
> she was afraid of getting arrested.

*Id.* Desnerck also filed a statement that night. ECF No. 26-7.

Desnerck wrote:

> I Nicholas Desnerck went to 108 Pearl St with Officer Ellis
> who acted as a peace officer while I had attempted to
> retrieve the rest of my property and my service dog. When
> Officer Ellis and I arrived I had opened the outer door to
> knock on the inner door and Misty Freeman had come out
> before I even entered the residence. Misty had immediately
> told us to leave and Officer Ellis advised her that he
> acted as a peace officer to retrieve my stuff and my dog.
> Misty had become agitated and began to argue with Officer
> Ellis and I, Officer Ellis had tried to diffuse the
> situation. At no point did Officer Ellis and I enter the
> residence during the incident.

*Id.*

Bender recalls asking Ellis the details of what happened,
but did not ask for a statement. Bender Dep. 24:9-24:23; 25:9-
25:11, ECF No. 26-9. Likewise Jackson recalls speaking to Ellis,
but not asking for a statement. Jackson Dep. 32:10-32:30, ECF
No. 26-10. Ellis testified that he never spoke with Jackson
about the September 27, 2015 incident and that he did not
discuss any specific questions about it with Bender. Ellis Dep.
24:13-26:3, ECF No. 28-5. Ellis also testified that he never

6

provided any written documentation about the incident. *Id.* at
26:13-26:17.

On September 28, 2015, Bender applied for an arrest
warrant, alleging that Plaintiff intentionally made a false
statement. ECF No. 26-12. The information reported that Freeman
signed a "supporting deposition alleging facts that were found
to be not true and accurate." *Id.* The information attached
Freeman's statement, as well as the statements made on the same
night by Matthew and Desnerck. *Id.*

The warrant was granted on September 30, 2015. ECF No. 26-
13. Freeman was arrested on October 3, 2015 at her daughter's
football game in front of a full stadium. Freeman Dep. 80:6-
82:6. She was taken to the police station and was kept in jail
until October 4, 2015, and only learned the charges against her
when she went before a judge that day. *Id.* 84:4-87:23. Freeman
was told that she was not allowed to substitute teach for
Jamestown Public Schools until the charges were cleared up. *Id.*
92:1-93:17. The charge was ultimately dismissed without
prejudice on April 27, 2016, because the criminal information
was facially insufficient. ECF No. 26-14.

Freeman filed a Notice of Claim on June 27, 2016. ECF No.
28-4. Defendant Bender applied for a new arrest warrant on July
28, 2016. ECF No. 26-16. Freeman alleges in her complaint that
Defendants chose to apply again that day because it was the day

after they were served with her Notice of Claim. ECF No. 19, ¶40. According to Defendants, Assistant District Attorney Bridget Kleinfelder sent a memorandum dated May 6, 2016 to Bender directing him to refile an amended information against the Freeman; however, "the memo was misplaced" and Bender did not receive and/or act on it until the end of July 2016. ECF No. 26-1. The warrant was granted, ECF No. 26-17, and Plaintiff turned herself in. Freeman Dep. 97:15-97:17. On November 10, 2017, the charge was dismissed because of a violation of the speedy trial time limitations set forth in New York State Criminal Procedure Law Section 30.30. ECF No. 26-19.

## Standard of Review

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has discharged its burden the opposing party must set out specific facts showing a genuine

issue of material fact for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  In deciding a motion for summary judgment, the trial court's function "is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## Discussion

Freeman brings her action pursuant to 42 U.S.C. §1983 for the violation of her Fourth and Fourteenth Amendments rights of the United States Constitution. Pl.'s First Am. Compl. ¶1, ECF No. 19. Her First Amended Complaint contains four counts. Count I claims that Freeman's constitutional rights were violated by Ellis through unlawful entry. Count II is a claim of false arrest asserted under 42 U.S.C. §1983 for violations of Freeman's Fourth and Fourteenth Amendment rights. The claim is made against Ellis, Bender, and Jackson. Count III asserts a claim for violations of Freeman's Fourth and Sixth Amendment rights under 42 U.S.C. §1983 for malicious prosecution against those same three defendants. Count IV makes a First Amendment retaliation claim against Bender and Jackson. Defendants did not move for summary judgment on Counts I and IV, so the Court will only address Counts II and III.

In moving for summary judgment, Defendants argue that the officers are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). An assertion of qualified immunity requires a court to determine "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott,* 599 F.3d 129, 133-34 (2d Cir. 2010)). If the Supreme Court and the Second Circuit have not determined the precise contours of a right under a given set of facts, that right may be clearly established if the law is established in other circuits and the Second Circuit's own decisions "foreshadowed the right." *Bailey v. Pataki,* 708 F.3d 391, 405 (2d Cir. 2013). "Qualified immunity is an affirmative defense, and the burden is on the defendant-official to establish it on a motion for summary judgment." *Id.* at 404.

10

I.   **False Arrest Claims Against Defendants Ellis, Bender, and Jackson**

In her claim for false arrest, Freeman makes a 42 U.S.C. §1983 claim alleging that her Fourth and Fourteenth Amendment rights were violated by Ellis, Bender, and Jackson. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. *See Payton v. New York,* 445 U.S. 573, 585 (1980). "The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997). "A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonable competent police officers could disagree as to whether there was probable cause to arrest." *Id.*

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under §1983." *Jenkins v. City of N.Y.,* 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks omitted). "Probable cause to arrest

exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (internal quotation marks and alteration omitted). In determining whether an officer had probable cause, courts consider "those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted) (quoting *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002)).

An officer's probable cause determination is "objectively reasonable" if there was "arguable" probable cause to make the arrest — "that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (internal quotation marks omitted). With respect to false arrest, dismissal "is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589-93, 199 L. Ed. 2d 453 (2018) (qualified immunity applies unless "existing precedent" places

the unlawfulness "of the particular arrest beyond debate") (internal quotation marks omitted).

In claiming that summary judgment should be granted on the claims of false arrest, Defendants make two arguments. First, they argue that where, as in this case, arrest warrants were issued and filed, summary judgment should be granted because "[i]t is well established that 'a police officer making an arrest pursuant to a judicially issued warrant is entitled to qualified immunity from liability.'" Def.'s Mem. Supp. Summ. J. 7, ECF No. 26-4. Defendants cite to the case *Malley v. Briggs,* 475 U.S. 335 (1986), when making this claim. However, in *Malley* the Supreme Court explicitly rejected the contention that an officer is automatically entitled to qualified immunity on the basis of a warrant for probable cause simply because a magistrate approved the application. *Id.* at 345-46. Thus, though a warrant issued by a neutral magistrate is relevant to qualified immunity, Defendants are incorrect in asserting that such approval is dispositive. *See Messerschmidt v. Millender,* 565 U.S. 535, 554-55 (2012) (explaining that though an officer is not automatically entitled to qualified immunity for seeking a warrant unsupported by probable cause simply because a magistrate approved the application, the fact that an officer is able to secure approval is "certainly pertinent" in assessing whether he could have held a reasonable belief that the warrant

13

was supported by probable cause.) An officer can "have no reasonable grounds for believing that [a] warrant was properly issued" "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon,* 468 U.S. 897, 923-24 (1984). Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis of finding probable cause, the shield of qualified immunity is lost. *See Malley v. Briggs,* 475 U.S. 335, 344-45 (1986); *see also Rivera v. United States,* 928 F.2d 592, 604 (2d Cir. 1991). As explained below, this is precisely what Freeman is accusing Defendants of doing.

Next, Defendants argue that the warrants themselves were based upon probable cause, or at least upon "arguable" probable cause. Of note, the Second Circuit has explained that "[a]rguable probable cause should not be misunderstood to mean almost probable cause." *Dancy v. McGinley,* 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007)). "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.* (quoting *Jenkins,* 478 F.3d at 87).

14

Defendants argue that they had probable cause to apply for
the warrants based on "the investigation by LT Jackson and all
the additional witness statements" when "LT Jackson's visual
observations, the statements of Plaintiff's son, Mr. Desnerck,
and Officer Ellis were consistent and in direct contradiction to
Plaintiff's written statement." Def.'s Mem. Supp. Summ. J. 5,
ECF No. 26-4. Freeman counters with disputed issues of fact as
to each alleged source.  For example, while Defendants claim
that information from Ellis formed a basis for probable cause,
Ellis testified that he never spoke of the incident with
Jackson, that he was not asked specific questions about the
incident by Bender, and that he submitted no documentation
regarding the incident.  Freeman also points to Matthew's
testimony, specifically his assertion that Jackson did not ask
about the broken lock during the investigation, and that he
would not have told Jackson that the lock had been broken a
couple of months before. Matthew F. Dep. 25:4-25:18, ECF 28-3.

When it comes to Matthew's statement to the police, Freeman
argues that Matthew's statement "essentially neither confirms
nor denies observing either sides' versions of events, but is
much more consistent with Plaintiff's version and certainly does
not discredit Plaintiff's statement in any way." Pl.'s First Am.
Compl. ¶29, ECF No. 19. Freeman highlights the fact that both

statements report that Freeman yelled at Desnerck and Ellis to get out / leave. This issue is one best left to a jury.

Freeman also alleges that "damage was done to the locking mechanism to the door in question, as well as the door itself" and cites to Jackson's photographs. Pl.'s Resp. to Def.'s Statement of Undisputed Facts 3, ECF No. 28-1 (citing Pl.'s Ex. D, ECF No. 28-6). It is the job of a jury, and not this Court, to examine the photographs and determine to what extent, if any, damage was done during the incident to the door and its locking mechanism.

Finally, Freeman argues about the extent to which Desnerck's statement contradicted her own.[2] According to Freeman:

> While [Desnerck] indicates he and Defendant Ellis did not enter the residence, he does admit to opening the outer door to knock on the inner door. Based on the layout as given by all relevant witnesses, most notably the Plaintiff, Desnerck's statement is just another way of

---

[2] It is worth noting that the warrants eventually issued were for "PL-210.45", "making a punishable false written statement." ECF No. 26-13; 26-17. Section 210.45 of the New York Penal Law states that "[a] person is guilty of making a punishable false written statement when he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that the false statements made therein are punishable." N.Y. Penal Law § 210.45 (Consol. 2020). Section 210.50 of the New York Penal Law states that "In any prosecution […] for making a punishable false written statement, falsity of a statement may not be established by the uncorroborated testimony of a single witness." N.Y. Penal Law § 210.50 (Consol. 2020). Thus, if Desnerck's statement were the only thing establishing the falsity of Plaintiff's statement, § 210.50 would not allow conviction.

> saying that he had entered through the exterior door…
> walked into the hallway… and then knocked on the inner
> door into the living room. Which in turn, is another way
> of saying that he had entered the residence…just not the
> primary living area of said residence.

Pl.'s Resp. to Def.'s Statement of Undisputed Facts 3-4, ECF No. 28-1. Freeman argues that if Defendants had done more investigation into the statement made by the very person who brought the police to her house, they would have seen that it was not contradictory.

The Second Circuit does not impose a general duty to investigate all potentially-exculpatory evidence. *See Walczyk v. Rio,* 496 F.3d 139, 160 (2d Cir. 2007) ("[W]e have specifically ruled that a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." (internal quotation marks and citations omitted)); *see also Panetta v. Crowley,* 460 F.3d 388, 395-96 (2d Cir. 2006); *Jocks v. Tavernier,* 316 F.3d 128, 135-36 (2d Cir. 2003). Nonetheless, "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause," *Jocks,* 316 F.3d at 135, and "an officer may not disregard plainly exculpatory evidence," *Panetta,* 460 F.3d at 395. *See, e.g., Sankar v. City of New York,* 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (holding that an officer may need to investigate a victim's complaint when he

becomes aware of facts that "give[] rise to a motive for a false accusation" (alteration in original) (quoting *Mistretta v. Prokesch,* 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998))). Here, viewing the facts in a light most favorable to the non-moving party, the statements and evidence available to the police did not directly contradict Freeman's claims that Ellis and Desnerck "entered into my front door: breaking the lock in the process," and a reasonable juror could conclude that probable cause was lacking. ECF No. 26-8.

"To determine whether a false statement was necessary to a finding of probable cause, we consider a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information." *Ganek v. Leibowitz,* 874 F.3d 73, 82 (2d Cir. 2017). If there is no probable cause after the correction, then the "false statement was 'necessary' to secure issuance of the warrant." *Id.* In performing the correction, the court must "examine all of the information the officers possessed when they applied for the arrest warrant." *Escalera v. Lunn,* 361 F.3d 737, 744 (2d Cir. 2004). Construing the facts in favor of Freeman, as the Court must on summary judgment, a corrected affidavit would not have supported the granting of a warrant. Consequently, Defendants have not carried their burden of demonstrating the

absence of a genuine issue of material fact, and are not
entitled to summary judgment on Freeman's claim of false arrest.

**II.  Malicious Prosecution Claims Against Defendants Ellis,
      Bender, and Jackson**

To sustain a §1983 claim for malicious prosecution, a
plaintiff must show "a seizure or other perversion of proper
legal procedures implicating the claimant's personal liberty and
privacy interests under the Fourth Amendment." *Washington v.
County of Rockland,* 373 F.3d 310, 316 (2d Cir. 2004) (quotation
marks omitted). A plaintiff must also proffer evidence that
shows that "criminal proceedings were initiated or continued
against him, with malice and without probable cause, and were
terminated in his favor." *Lanning v. City of Glens Falls,* 908
F.3d 19, 24 (2d Cir. 2018).

Defendants do not dispute that both criminal proceedings
were commenced against Freeman. Freeman has agreed that the
first proceeding, which was dismissed due to facial
insufficiency, did not terminate in her favor. Pl.'s Mem. in
Opp'n to Def.'s Mot. Summ. J. 11, ECF No. 28; *see also Neal v.
Fitzpatrick,* 250 F.Supp.2d 153 (E.D.N.Y. 2003); *Russell v. The
Journal News,* 672 Fed.App'x 76, 78-79 (2d Cir. 2016) (holding
that plaintiff's prosecution did not terminate in his favor when
"the state court dismissed the charges without prejudice based
on facial insufficiency."). The second proceeding, however, was

dismissed for lack of a speedy trial under New York law. ECF No. 26-19. "Both New York law and Second Circuit precedents hold that a dismissal of criminal charges pursuant to N.Y. Crim. Proc. Law. §30.30, for lack of a speedy trial, constitutes a favorable termination" of a criminal proceeding for an accused who subsequently files an action alleging malicious prosecution. *Golub v. City of New York,* 334 F. Supp. 2d 399, 407 (S.D.N.Y. 2004).[3]

Defendants have not alleged that any new information came to light between the decision to apply for the warrant and the decision to prosecute, so this Court cannot conclude that the government is entitled to summary judgment on the issue of probable cause. *See Walsh v. City of New York,* 742 Fed. Appx. 557, 562 (2d Cir. 2018) (concluding that where "a reasonable juror could believe that probable cause did not exist" for the plaintiff's arrest, "it follows that a reasonable juror could also believe" that probable cause did not exist for the

---

[3] In 2018, the Second Circuit clarified its position on the favorable termination element of a §1983 malicious prosecution claim, explaining that a plaintiff must plausibly allege that the criminal proceedings filed against him "were terminated in a manner indicating his innocence." *Lanning v. City of Glens Falls,* 908 F.3d 19, 29 (2d Cir. 2018). However, this Court agrees with the persuasive reasoning of the court in *Blount v. City of New York* that "*Lanning* makes clear that, as the Circuit consistently held pre-*Lanning*, dismissals on speedy trial grounds are terminations in the favor of the accused." No. 15-CV-5599 (PKC) (JO), 2019 WL 1050994 at *5 (E.D.N.Y. Mar. 5, 2019).

plaintiff's prosecution.). Finally, with regard to the malice element, the Second Circuit has noted that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti v. N.Y. City Transit Auth.,* 124 F.3d 123, 131 (2d Cir. 1997). Freeman also argues that Bender's statement attacking her credibility raises a genuine issue of material fact regarding malice.

However, nowhere in her amended complaint nor her memorandum of law in opposition to Defendants' summary judgment motion does Freeman explain how Ellis was involved in the prosecution. Ellis himself says that he only learned of the charges against Freeman after the warrant application was issued and the paperwork came through the police department. Ellis Dep. 26:18-27:4; 28:9-28:17. Because there is no genuine issue of material fact relating to whether Ellis was involved, the malicious prosecution claim against him is dismissed.

For the reasons set forth above, Defendants' motion for summary judgment as to the malicious prosecution claim against Ellis is **granted**, but summary judgment as to the malicious prosecution claim against Bender and Jackson is **denied.**

### Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is **granted in part and denied in part.** Summary

judgment is granted on Count III as it relates to Ellis. Summary judgment is otherwise denied.

DATED at Burlington, Vermont, this 1st day of October, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge