```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                    WESTERN DISTRICT OF NEW YORK


MISTY FREEMAN,                        :
                                      :
        Plaintiff,                    :
                                      :
        v.                            :   Case No. 1:17-cv-683
                                      :
CITY OF JAMESTOWN POLICE OFFICER      :
ELLIS; CITY OF JAMESTOWN POLICE       :
SGT. BENDER; CITY OF JAMESTOWN        :
POLICE LT. JACKSON; and               :
CITY OF JAMETOWN POLICE OFC.          :
JOHN DOE(S)                           :
                                      :
        Defendants.                   :
```

OPINION AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Misty Freeman of Jamestown, New York ("NY") brings this action against several City of Jamestown police officers for allegedly violating her constitutional rights. Specifically, Ms. Freeman alleges that Defendant Police Officer Aaron Ellis unlawfully entered her home in violation of the Fourth Amendment of the United States Constitution. She also alleges that Officer Ellis, as well as Sergeant Robert Bender and Lieutenant Timothy Jackson, engaged in false arrest. Finally, she brings malicious prosecution and retaliatory action claims against Sergeant Bender and Lieutenant Jackson. Officer Ellis denies ever entering Ms. Freeman's home. The remaining Defendants argue that Ms. Freeman's arrest was justified and

that they did not engage in malicious prosecution or retaliatory conduct.

The Court held a two-day bench trial on May 16 and May 17, 2022. At the conclusion of the evidence, Defendants moved to dismiss the unlawful entry and the unlawful arrest claims against Officer Ellis, as well as the malicious prosecution and retaliatory action claims against Lieutenant Jackson. The Court granted Defendants' motion as to the unlawful arrest claim against Officer Ellis and reserved judgment on all other claims.

Based upon the testimony of witnesses, the evidence submitted, and arguments made by counsel, the Court makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. In sum, the Court finds for Defendants on all counts.

## I. Findings of Fact

1. Plaintiff Misty Freeman is a resident of Jamestown, NY. On September 27, 2015, the date giving rise to the causes of action now before the Court, she resided at 108 Pearl Avenue, Jamestown, NY 14701 with her three children.

2. Defendant Police Officer Aaron Ellis, Defendant Sergeant Robert Bender, and Defendant Lieutenant Timothy Jackson were all employed by the City of Jamestown Police Department ("Jamestown Police Department") during the period in question and were all acting in their professional capacities during the events that gave rise to this lawsuit.

3. During the summer of 2015, Ms. Freeman allowed Nicholas Desnerck, Mr. Desnerck's girlfriend, and Mr. Desnerck's dog to stay at her home in Jamestown, NY.

4. The couple left the residence in the middle of September, leaving behind some personal items and the dog. Mr. Desnerck asked Ms. Freeman to care for his dog while he was away.

5. On September 24, 2015, Mr. Desnerck came to Ms. Freeman's home to discuss the return of his dog and property.

6. Ultimately, they could not agree on the return of that property.

7. On September 27, 2015, Mr. Desnerck went to the Jamestown Police Department, seeking assistance in obtaining his property.

8. Mr. Desnerck told Officer Aaron Ellis that he had been a resident of Ms. Freeman's home and that his personal belongings were inside the home.

9. Officer Ellis agreed to act as a peace officer and accompany Mr. Desnerck to Ms. Freeman's residence in an effort to get the items.

10. A peace officer's sole purpose is to maintain the peace while helping to facilitate stressful interactions; it is not to engage in law enforcement or investigative efforts.

11. Upon arriving at Ms. Freeman's residence, Mr. Desnerck entered the mudroom.

12. Officer Ellis walked behind Mr. Desnerck as they approached the house.

13. Mr. Desnerck testified that he saw Officer Ellis behind him and on the steps of the residence but did not see him in the mudroom.

14. Officer Ellis testified that he never entered the mudroom.

15. Ms. Freeman testified that Officer Ellis walked behind Mr. Desnerck and entered the mudroom.

16. A shouting match between Ms. Freeman and Mr. Desnerck ensued.

17. Rebecca Freeman, Ms. Freeman's daughter, testified that Officer Ellis was "just kind of standing there" and Mr. Desnerck testified that Officer Ellis was "professional" during the encounter. Ms. Freeman testified that Officer Ellis became threatening towards her.

18. Ms. Freeman ordered Mr. Desnerck and Officer Ellis to leave her property and they complied.

19. Ms. Freeman then went to the Jamestown Police Department to report what had happened.

20. Ms. Freeman was interviewed by Sergeant Robert Bender.

21. According to Sergeant Bender's deposition, Ms. Freeman told him that Officer Ellis broke the lock and kicked the door in.

22. Sergeant Bender then told Lieutenant Jackson about Ms. Freeman's report, specifically that she alleged that Officer Ellis kicked in her door.

23. In her police report and supporting deposition, Ms. Freeman attested that Officer Ellis and Mr. Desnerck entered through her front door into the mudroom and broke a lock on the outer door.

24. After hearing Ms. Freeman's allegation, Lieutenant Jackson investigated Ms. Freeman's residence.

25. Lieutenant Jackson found no evidence of forceable entry. He also testified that he spoke to Matthew Freeman, and Matthew told him that nothing had happened.

26. Sergeant Bender and Lieutenant Jackson together concluded that there was probable cause to believe that Ms. Freeman had submitted a false statement.

27. According to Sergeant Bender and Lieutenant Jackson, the basis for this probable cause finding was Ms. Freeman's allegation that Officer Ellis had kicked in her door, broken the lock, and illegally entered the residence—an account that differed from the reports given by Mr. Desnerck, Matthew Freeman, and Officer Ellis.

28. A City Court Judge in Jamestown, NY found probable cause that Ms. Freeman had made a false written statement and issued an arrest warrant.

29. On October 3, 2015, members of the Jamestown Police Department went to Ms. Freeman's home to execute the arrest warrant.

30. While at her home, police officers were told that Ms. Freeman was at her daughter's football game.

31. The officers called in for more officers and went to the football game to arrest Ms. Freeman.

32. Ms. Freeman was then arrested and escorted to the police station.

33. She was held at the police station until the following day.

34. The charge against Ms. Freeman was dismissed without prejudice on April 27, 2016, by Judge Frederick Larson.

35. Ms. Freeman filed a Notice of Claim against members of the Jamestown Police Department on June 27, 2016.

36. Assistant District Attorney Bridget Kleinfelder sent Sergeant Bender a memo on May 6, 2016, notifying him that he could refile charges against Ms. Freeman.

37. The Jamestown Police Department filed a new criminal complaint against Ms. Freeman on July 29, 2016.

38. Ms. Freeman was rearrested on August 3, 2016, on the same charge of making a false written statement.

39. The second charge was dismissed by Judge Frederick Larson on November 10, 2016, because of a violation of the speedy trial time limitations set forth in New York State Criminal Procedure Law § 30.30.

## II. Conclusions of Law

A. Fourth Amendment Unlawful Entry Claim

Ms. Freeman claims that Officer Ellis unlawfully entered her home in violation of the Fourth Amendment. The Fourth Amendment makes it unlawful for a police officer to subject a person to "unreasonable searches and seizures." U.S. Const. amend. IV. "The home has properly been regarded as among the most highly protected zones of privacy, and the sanctity of private dwellings is ordinarily afforded the most stringent Fourth Amendment Protection." *Ayeni v. Mottola*, 35 F.3d 680, 685 (2d Cir. 1994) (footnotes, brackets, and internal quotation marks omitted). The Supreme Court has recognized that under Fourth Amendment law "searches and seizures inside a home without a warrant are presumptively unreasonable." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Warrantless entry into a home is considered reasonable only when it meets "an exception to the warrant requirement." *Anthony v. City of New York*, 339 F.3d 129, 135 (2d Cir. 2003). In making this assessment, the "core

question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action." *United States v. Klump*, 536 F.3d 113, 117-18 (2d Cir. 2008) (internal citation and quotation marks omitted); *see also Tierney v. Davidson*, 133 F.3d 189, 196 (2d. Cir 2001) (holding that warrantless entry by officers is justified "to render emergency aid"). This inquiry is "objective" and requires that a court consider "the totality of the circumstances confronting law enforcement agents in the particular case." *Klump*, 536 F.3d at 117 (internal quotation marks omitted).

In this case, the Court finds that the "emergency aid" exception, under which "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury," is applicable. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Officer Ellis and Mr. Desnerck both claim that Officer Ellis never entered the residence, while Ms. Freeman alleges that he did. The Court finds that Plaintiff has not proven Officer Ellis did in fact enter her residence. The Court comes to this conclusion because Plaintiff relies solely on her testimony and her daughter's testimony to prove unlawful entry. Both Mr. Desnerck and Officer Ellis testified that Officer Ellis did not enter the mudroom. Matthew Freeman testified that he saw the individuals

leaving the property on the stairs but did not see them physically in the mudroom. Therefore, the extent of Ms. Freeman's evidence that Officer Ellis entered unlawfully is her and her daughter's testimony from which the Court cannot conclude that Officer Ellis entered the mudroom.

However, even assuming Officer Ellis did enter the mudroom, an exception for warrantless entry would apply here. Officer Ellis was present as a peace officer. Given that multiple witnesses testified that Mr. Desnerck and Ms. Freeman engaged in a verbal fight with shouting, it would not have been unreasonable for Officer Ellis to enter the mudroom to help keep the peace. Therefore, a limited incursion into the mudroom in this context does not violate Ms. Freeman's Fourth Amendment rights.

Furthermore, even if Officer Ellis' alleged entry into the mudroom was determined to be unreasonable, he would be protected by qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether qualified immunity applies to a government official's actions, a court must consider (1) "whether the facts shown

'make out a violation of a constitutional right'"; and (2) "'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson*, 555 U.S. at 223). A right is considered "clearly established" when "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Court is not aware of any case law which would make it clear to a reasonable officer that entry under these circumstances would violate Plaintiff's clearly established rights. *See D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted) (noting "the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment"). Furthermore, courts have given officers "great latitude" to justify warrantless entry in the context of domestic disputes. *See Tierney*, 133 F.3d at 197 ("Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances . . . ."). Given that this case involves a domestic dispute, the Court cannot conclude that

9

a reasonable officer would be on notice that entering the mudroom of a person's home to help keep the peace would violate clearly established law. Furthermore, the fact that the potential for danger or violence in this case was not imminent is not enough to deny an officer qualified immunity. *See Batt v. Buccilli*, 725 F. App'x 23, 27 (2d Cir. 2018) (citing *Wesby*, 138 S. Ct at 590) (emphasis omitted) (noting that a plaintiff could not rely on cases "that involved obvious and overt emergencies" to deny qualified immunity because "[t]he simple fact that the officers in [those] cases acted properly does not, by implication, 'clearly establish' that [an officer] acted improperly."). As such, Officer Ellis is entitled to qualified immunity.

The Court thus finds for Officer Ellis on the unlawful entry claim.

B. Fourth Amendment Wrongful Arrest Claim

The Fourth Amendment protects against "unreasonable searches and seizures" including wrongful arrests. U.S. Const. amend. IV. To establish a false arrest claim under 42 U.S.C. § 1983, which provides a vehicle for suing state actors who violate the United States Constitution, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Therefore, a false arrest claim will not be successful if

10

a police officer had probable cause or arguable probable cause to make the arrest. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest—even for a crime other than the one identified by the arresting officer—will defeat a claim of false arrest under the Fourth Amendment."); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)("Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."). Probable cause to arrest a person exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). This inquiry is based on the "facts available to the officer at the time of the arrest and immediately before it" and does not mandate "absolute certainty" on the officer's part. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

11

"Courts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks omitted).

Ms. Freeman alleges false or wrongful arrest claims against Sergeant Bender and Lieutenant Jackson.

      i.    Sergeant Bender

As noted above, a plaintiff cannot prevail on a false arrest claim if the officer had probable or arguable probable cause to arrest. *See Figueroa,* 825 F.3d at 99; *Escalera*, 361 F.3d at 743.

The Court concludes here that probable cause existed for Ms. Freeman's arrest. Under New York State law, a person is guilty of making a punishable false written statement if he or she "knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable." New York Penal Code § 210.45.

A full review of the testimony, along with the depositions submitted into evidence, allows the Court to conclude that there was probable cause to arrest Ms. Freeman for submitting false information to law enforcement. Sergeant Bender testified that Ms. Freeman told him that Officer Ellis broke her lock, kicked

12

in her door, and entered her mud room unlawfully. However, investigation of the door by Lieutenant Jackson did not reveal any signs of the alleged damage. Ms. Freeman also wrote in her written statement to the Jamestown Police Department that Officer Ellis had damaged the lock to the outer door of her house, but Lieutenant Jackson testified that there was no evidence of that damage. Mr. Desnerck also testified that Officer Ellis did not enter Ms. Freeman's home and that he did not damage her door. The contradictory testimony in this case is sufficient to be considered "reasonably trustworthy information . . . to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852

Furthermore, a City Court Judge for the City of Jamestown issued an arrest warrant for Ms. Freeman. This supports the conclusion that Ms. Freeman's arrest was reasonable. "Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk v. Rio,* 496 F.3d 139, 155–56 (2d Cir. 2007). "A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir. 1991). Ms. Freeman has not met that heavy burden here, as she has not demonstrated that the

13

information submitted to the City Court Judge who issued the arrest warrant was faulty or incorrect. Thus, the Court concludes that Sergeant Bender had probable cause to arrest Ms. Freeman.

However, even if Ms. Freeman's arrest were unreasonable, the Court finds that Sergeant Bender would be entitled to qualified immunity. The Court is not aware of any case law that establishes that it would be unreasonable for an officer to arrest a person for filing a false statement after investigating and finding no evidence of Plaintiff's allegations, hearing conflicting testimony, and securing an arrest warrant based on probable cause. Under qualified immunity the inquiry is not "what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). The Court cannot conclude that any reasonable officer in these circumstances would conclude that arresting Ms. Freeman would be a violation of her Fourth Amendment rights. Furthermore, given the facts of this case, "a rational jury could not find that the officer'[s] judgment was so flawed that no reasonable officer would have made a similar choice." *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995) (emphasis omitted). Therefore, Sergeant Bender is entitled to qualified immunity.

For the forementioned reasons, the Court finds for Sergeant Bender.

### ii. Lieutenant Jackson

For the reasons outlined above, the Court has found probable cause for Ms. Freeman's arrest. The existence of probable cause also defeats Ms. Freeman's unlawful arrest claim against Lieutenant Jackson. Additionally, like Sergeant Bender, Lieutenant Jackson is also entitled to qualified immunity on this claim.

### D. Fourth Amendment Malicious Prosecution Claim

To prove a malicious prosecution claim, a plaintiff must demonstrate "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Under § 1983, to prevail on a malicious prosecution claim, a plaintiff must also show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority* (NYCTA), 215 F.3d 208, 216 (2d Cir. 2000); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-117 (2d Cir. 1995) ("The Fourth Amendment right

implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person . . . . A plaintiff asserting a . . . malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'").

Ms. Freeman alleges malicious prosecution claims against Sergeant Bender and Lieutenant Jackson.

### i. Sergeant Bender

Given that the Court finds that Sergeant Bender had probable cause to arrest Ms. Freeman, her malicious prosecution claim cannot survive. Probable cause for an arrest will end the inquiry into malicious prosecution. *See Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000) (internal quotation marks omitted) (noting that a plaintiff claiming malicious prosecution must demonstrate a lack of probable cause). Therefore, the Court finds for Sergeant Bender on this claim.

### ii. Lieutenant Jackson

For the same reasons the Court finds for Sergeant Bender on Ms. Freeman's malicious prosecution claim, the Court also finds for Lieutenant Jackson. Specifically, the existence of probable cause also defeats Ms. Freeman's malicious prosecution claim against Lieutenant Jackson.

### E. First Amendment Retaliation Claim

Ms. Freeman also claims that the Jamestown Police Department retaliated against her. To prevail on a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers*, *New York*, 890 F.3d 386, 394 (2d Cir. 2018) (citing *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). Retaliation claims based on false arrest will be defeated if probable cause exists at the time of the arrest. *See Fabrikant v. French*, 691 F.3d 193, 218 (2d Cir. 2012) (internal quotation marks omitted). (holding that "[b]ecause probable cause existed . . . [plaintiff's] First Amendment retaliation claims must fail"). "An individual does not have a right under the First Amendment to be free from criminal prosecution supported by probable cause. . . ." *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992). This is true even when that prosecution "is in reality an unsuccessful attempt to deter or silence criticism of the government." *Id*.

Ms. Freeman alleges that both Sergeant Bender and Lieutenant Jackson retaliated against her in violation of her First Amendment rights. Specifically, Ms. Freeman alleges that the refiling of criminal charges against her after she filed a

17

claim against the Jamestown Police Department constitutes retaliation.

        i.   Sergeant Bender

Retaliation claims based on false arrest will be defeated if probable cause exists at the time of the arrest. *See Fabrikant,* 691 F.3d at 218. Therefore, because the Court has already found that probable cause existed for Ms. Freeman's arrest, her retaliation claim cannot survive. It is also worth noting that Assistant District Attorney Bridget Kleinfelder sent Sergeant Bender a memo on May 6, 2016, notifying him that he could refile charges against Ms. Freeman. Given that the memorandum encouraging the refiling of charges came from a neutral body outside of the Jamestown Police Department, this context further supports the Court's conclusion that there is no evidence of retaliation. The Court therefore finds for Sergeant Bender on Ms. Freeman's retaliation claim.

        ii.   Lieutenant Jackson

For the same reasons the Court finds for Sergeant Bender on Ms. Freeman's retaliation claim, the Court also finds for Lieutenant Jackson. Specifically, the existence of probable cause also defeats Ms. Freeman's retaliation claim against Lieutenant Jackson.

F. Damages

Plaintiff has the burden of proving damages. For each claim she must demonstrate that (1) she has or will have loss or harm and (2) that loss or harm was caused by the legal fault of the Defendant. Damages must be proven without speculation. Given that Ms. Freeman has not prevailed on any of her claims, the Court need not address damages. The Court notes, however, that Plaintiff has not adequately proven compensatory damages.

Specifically, she has not demonstrated any actual, documented loss from which the Court could calculate compensatory damages.

### III. Conclusion

For the foregoing reasons, the Court orders judgment in favor of Defendants on all counts.

DATED at Burlington, Vermont, this 13th day of June, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge